ROUNSAVILLE v. INSURANCE CO.

(Filed April 25, 1905.)

*Insurance—Contract to Renew—Agents—Undisclosed Principal—Right of Election—What Amounts to Election.*

1. Where the evidence in an action to recover a fire loss, shows that the plaintiff made an agreement with an agent, in his personal and not in his representative capacity, to renew a policy, and relied solely upon the agent's individual promise, the plaintiff has no claim against the defendant company for the agent's negligence in not renewing the policy.

2. When a person contracts with another who is in fact an agent of an undisclosed principal, he may, upon discovery of the principal resort to him or to the agent, at his election. When, however, he comes to knowledge of the facts and elects to hold the agent, he cannot afterwards have recourse to the principal.

3. The assertion of a claim against one of them without anything else of a more decisive character being done, or the bringing of a suit against either of them, is not sufficient, but if the claimant sues the agent to judgment, after a disclosure of the facts, it will be a conclusive election on his part to hold the agent liable and to discharge the principal.

ACTION by W. H. Rounsaville against North Carolina Home Insurance Company and O. W. Carr, heard by *Judge*

*Thomas J. Shaw* and a jury at the January (Special) Term, 1905, of the Superior Court of Guilford County.

This is an action by the plaintiff to recover for the loss of a storehouse by fire, which he alleges the defendant through its agent O. W. Carr, under the name of O. W. Carr & Co., had agreed to keep insured for him.   On September 1, 1900, defendant, by its said agent, issued a policy on the storehouse for $300, which it is admitted contained the usual terms and conditions of a standard fire insurance policy and provides that it may be continued by a renewal, in consideration of the premium for the renewal term.   It appears from the certificate of appointment issued by the company to Carr, that he was authorized to receive applications for insurance against loss or damage by fire, and collect premiums therefor, to countersign, issue and renew and consent to the transfer of policies of insurance, signed by the president and secretary of the company, conformably to its rules and regulations, and to such instructions as may be given from time to time by its proper officers.   It was also provided that his commission as agent could be revoked at the discretion of the company.

The only testimony in the case was that of the plaintiff himself which may be stated substantially as follows:   The policy was issued September, 1900, and was a renewal of a policy previously issued.   In February, 1901, O. W. Carr spoke to me about the rates being lower on the storehouse. I told him I was glad to hear it and to keep it renewed and running.   He said he would.   He called again two weeks after this.   We had about the same talk.   On January 8, 1902, I went into the office of O. W. Carr & Co., at Greensboro.   Carr was absent, but his son and clerk, Ernest Carr, was in the office.   I said to him "How about my store at Thomasville?"   He said "That's all right."   He then told me that the policy had been renewed last September (1901) and that the storehouse was insured for one year from that

date. He gave me the amount of the premium which I paid by check. The storehouse was burned February 26, 1902, and on that day O. W. Carr came into my store and told me of the fire. He said, "Were you insured?" I said "Yes sir." He said, "I know you ought to be, and should have been, but I am afraid Ernest neglected to attend to it." He said "I stopped at the office and did not find your policies and I am afraid Ernest neglected to renew it." I said "I will have to hold you responsible for his negligence." He said "Yes, we are responsible." He went out and was to call again when I got my mail. He came back and I said "Professor, my house was burned." He said, "I was afraid it was, and came here purposely to see you; I know you ought to have been insured and should have been"—and he again repeated that Ernest neglected to attend to it. I said "I can't be responsible for Ernest's negligence; I will have to hold O. W. Carr & Co. responsible;" and he said "We are responsible and I will do what is right in the matter." I told him that would be all right. (The declarations of O. W. Carr after the fire occurred were not insisted on as evidence against the insurance company.) The witness further testified: I looked to O. W. Carr for the pay, but as he was the agent I expected him to get it and pay it to me. I looked to him as agent. He promised me to renew the policy and keep it running but did not say with what company and I did not know with what company it was then running. He was my friend and I entrusted it to him to put the insurance in a good company. I did not know what companies were good. He was agent for several companies and I knew it. O. W. Carr never denied that he was liable for something. When he said that the failure to renew the policy was due to Ernest's neglect I looked to O. W. Carr for my loss on account of the fire. I do not know when I ascertained that the insurance had been placed with the defendant company.

It appeared that the agency of O. W. Carr ceased Feb-

ruary 4, 1901, and that no policy was ever issued in renewal of the policy of September 1, 1900, and no premium was paid by plaintiff for the renewal of the insurance until long after the said policy of insurance had expired, and then paid to Carr when he was not an agent of the company. It further appeared that the plaintiff recovered judgment in this case against O. W. Carr for the amount he claimed to be due on the agreement to renew the policy in September 1901.

At the close of plaintiff's testimony, the court, on motion of counsel of the insurance company, non-suited the plaintiff as to the said defendant. Plaintiff excepted and appealed.

*W. P. Bynum, Jr.. G. S. Ferguson, Jr* and *E. J. Justice* for the plaintiff.

*Stedman & Cook* and *Busbee & Busbee* for the defendant.

WALKER, J. After stating the case: If it is conceded that O. W. Carr had the authority, as agent of the insurance company, to agree to renew the policy, we yet think it is clear that plaintiff made the agreement with him in his personal and not in his representative capacity and relied solely upon Carr's individual promise for his protection. This is evident not only from what occurred between them at the time of the agreement but from the conversation they had after the fire, in which the plaintiff charged Carr with liability for his loss and Carr admitted it and agreed to answer for it. It further appears that plaintiff has sued Carr in this action and taken judgment against him.

If the agreement with the plaintiff to renew the policy was made by Carr as agent and he was acting at the time not for himself but for and in behalf of the company, who was disclosed as his principal, and this was understood by both parties, the company would be solely liable, if Carr had authority to act for it, as the agreement would be its own and not that of its agent. *Meadows v. Smith,* 34 N. C., 19; *Bank v.*

*Wright,* 48 N. C., 376; *McCall v. Clayton,* 44 N. C., 422; *Potts v. Lazarus,* 4 N. C., 180; *Meeken v. Claghorn,* 44 N. Y., 349; *Silver v. Jordan,* 136 Mass., 319. In such a case we could not even infer that Carr intended to superadd his own liability to that of his principal without sufficient words in the agreement to warrant such an inference. *Meeken v. Claghorn, supra.*

If we assume that he was acting for the company, the latter, as it appears, was an undisclosed principal and in that view of the case the plaintiff may meet with another insuperable obstacle to his right to maintain his action against the company. The general principle is that when a person contracts with another who is in fact an agent of an undisclosed principal, he may, upon discovery of the principal, resort to him or to the agent with whom he dealt, at his election. When however he comes to a knowledge of the facts and elects to hold the agent, he cannot afterwards have recourse to the principal. *Kingsley v. Davis,* 104 Mass., 178. They are not jointly liable, as the obligation is in its very nature several, unless the agent has by contract or by his conduct added his own liability to that of his principal, which is not the case here. The only question then to be considered is, has the plaintiff made such an election to hold the agent liable as will preclude his resort to the principal. There is some slight conflict of authority upon the question as to what is sufficient to constitute a binding election, as to either principal or agent, in such a case. It is generally agreed that the mere assertion of a claim against one of them without anything else of a more decisive character being done, or the bringing of a suit against either one of them, is not sufficient, but it is established, we think, by the weight of authority that if the creditor or claimant sues the agent to judgment, after a disclosure of the facts, it will be a conclusive election on his part to hold the agent liable and to discharge the principal. This principle was announced in

*Priestly v. Fernie,* 3 H. & C. (Exc.) 977, and it was approved in *Kendall v. Hamilton,* L. R. 4 App. Cases 504, in which it is thus stated by *Lord Cairns* "The person with whom he contracts may sue the agent, or he may sue the principal, but if he sues the agent and recovers judgment, he cannot afterwards sue the principal, even although the judgment does not result in satisfaction of the debt;" and convincing reasons are then given in support of the principle. It seems to have received the approval of the text writers and of the courts of this country. Pollock on Contracts (1 Am. Ed.) p. 230; 1 Addison on Contracts (8 Ed.) p. 89; *Sessions v. Block,* 40 Mo. App. 569; *Jones v. Ins. Co.,* 14 Conn., 501; *Kingsley v. Davis,* 104 Mass., 178. In *Tulhill v. Wilson,* 90 N. Y., 428, the court referring with approval to *Priestly v. Fernie* and holding that suing the agent to judgment is a final and irrevocable election to look to him and not to the principal, says: "The vendor could not enforce his claim against both the principal, when discovered, and the agents who contracted in his behalf. Granting that each was liable, both were not, for both could not be at one and the same time, since the contract could not be the personal contract of the agents, and yet not their contract but that of the principal." When the creditor is called upon to elect as between the principal and his agent, is a question discussed and decided in the leading case of *Thompson v. Davenport,* 17 E. C. L. 335 (9 Barn. & Cress, 78,) the *Chief Justice (Lord Tenterden)* delivering the opinion of the court. That the plaintiff in this case, even if he did not contract with Carr, without any reference to the company, and did not confide in him alone, was put to his election when he discovered the name of the alleged principal, is a proposition clearly sustained by the decision in that case. See also *Curtis v. Williamson,* L. R. 10 Q. B. 57; Reinhard on Agency Sec. 331. After the course the plaintiff has chosen to pursue, we are not prepared to hold

that he can now recur to the alleged principal for the satisfaction of his claim.

We have not adverted to the fact that the plaintiff did not pay the premium for the renewal of his insurance at the time it was due and did not until some time elapsed after it should have been paid, nor to the fact that he gave no notice to the company after he had failed to receive a renewal policy. When he paid the premium in January 1902, he did not even ask for a new policy or a certificate of renewal. It is plain that by the terms of the policy it was contemplated that a new one should be issued at the time of renewal or at least a certificate of some kind showing that the insurance had been continued. This matter was pressed upon our attention by the defendant's counsel and the cases of *Croghan v. N. Y. Underwriter's Agency,* 53 Ga., 109 and *O'Reilly v. C. L. Asso.,* 101 N. Y., 575, cited to show that under such facts and circumstances there can be no liability of the company to the plaintiff. The cases seem to sustain the contention of the defendant. It is sufficient however for our purpose to hold merely that there are not sufficient facts upon which to base a claim against the defendant, the entire transaction showing a manifest intention on the part of the plaintiff to rely on Carr individually and not as the representative of the insurance company.

This decision renders it unnecessary to discuss the contention of the plaintiff's counsel that it was the duty of the company to notify plaintiff of the termination of Carr's agency. As a general rule that duty does devolve upon an insurance company as was held in *Braswell v. Ins. Co.,* 75 N. C., 8, but as we have shown, our case has not been brought within the operation of the principle of that decision. The question raised by the defendant as to the failure to file proofs is also necessarily excluded from our consideration by the reason for the conclusion to which we have come.

We have not been able to discover any error in the decision of the court below.

No Error.

HOKE, J. did not sit.