**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-2057**

DESA ALLEN BALLARD, as Personal Representative of the Estate of Chris Combis,

Plaintiff - Appellant,

and

LINDA COMBIS; MARY COMBIS,

Intervenors/Plaintiffs,

v.

DIANE COMBIS, as former Trustee of the Trust of Chris Combis,

Defendant - Appellee,

GEORGE COMBIS; CHRIS A. COMBIS; SUPERIOR TILE MARBLE AND TERRAZZO CORPORATION; SUPERIOR STONE OF THE SOUTHEAST, INC.,

Respondents - Appellees.

**No. 16-2136**

DESA ALLEN BALLARD, as Personal Representative of the Estate of Chris Combis,

Plaintiff - Appellee,

and

LINDA COMBIS; MARY COMBIS,

        Intervenors/Plaintiffs,

    v.

GEORGE COMBIS; CHRIS A. COMBIS; SUPERIOR TILE MARBLE AND
TERRAZZO CORPORATION; SUPERIOR STONE OF THE SOUTHEAST,
INC.; DIANE COMBIS,

        Respondents - Appellants.

_____

Appeals from the United States District Court for the District of South Carolina, at Rock
Hill. Joseph F. Anderson., Jr., Senior District Judge. (0:14-cv-01839-JFA)

_____

Argued: September 25, 2018                    Decided: January 8, 2019

_____

Before NIEMEYER, DIAZ, and FLOYD, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

_____

Douglas Neal Truslow, TRUSLOW & TRUSLOW LAW FIRM, Columbia, South
Carolina, for Appellant/Cross-Appellee. David Glennon Redding, Joseph Raymond
Pellington, REDDING TISON & JONES, PLLC, Charlotte, North Carolina, for
Appellees/Cross-Appellants.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This consolidated appeal involves debts and obligations relating to the estate of Chris "Pop" Combis, the patriarch of the Combis family, who passed away in 2009.[1] For the reasons that follow, we affirm in part, vacate in part, and remand.

I.

In Charlotte, North Carolina, Pop Combis founded a company called Superior Tile, Marble, and Terrazzo, Inc. (hereinafter "Superior Tile"). Superior Tile was very successful. It brought in a great deal of money. Pop regularly shifted large sums of that money from the company to his family and back to the company again. This was, at least in part, how Pop supported his two daughters, Linda and Mary, well into their adulthood. Pop's son, George, treated the company's money in much the same way as he became increasingly involved in running—and eventually took ownership of—Superior Tile.

Regrettably, neither Pop, George, nor other members of the family kept clear records of their transactions. As a result, the financial ties between Pop's estate, Superior Tile, and Pop's adult children have devolved into near-inscrutability. The parties, after years of acrimony and at least a dozen individual lawsuits disputing who owes how much to whom, now ask the federal courts to sort it all out.[2] The district court has done much of the work

---

[1] Because so many of the parties to this appeal share the surname "Combis," we refer to them by their given names. Additionally, because the parties refer to the late Christopher Combis as "Pop," we do the same.

[2] Having considered various motions and voluminous evidence on removal of this case from state to federal court, the district court determined that it had jurisdiction over the

already; the only substantial issues remaining on appeal involve two transactions that occurred during Pop's life.

In 2003, Pop executed his last will and testament. Under the terms of his will, the property in his estate was to pour over into a revocable trust (the "Trust") at the time of his death. The Trust was established under North Carolina law. Its beneficiaries were Pop's three children: George, Mary, and Linda. At first, Pop named himself as trustee; later (in 2006), he appointed George's wife, Diane, to that position.

In 2005, Pop loaned $230,000 of his own money to Superior Tile. He and Superior Tile executed a home-made written agreement (the "Note") setting out the terms of the loan. Under the Note, Superior Tile had to: (1) make regular interest payments on the $230,000 principal; (2) pay Linda and Mary a monthly stipend; (3) pay some of Linda's and Mary's expenses, such as their car insurance; and (4) return the full principal to Pop's estate 30 days after his death.

In 2007, Pop sued Superior Tile in North Carolina state court. In relevant part, Pop alleged that Superior Tile "ha[d] breached" the Note. He did not make factual allegations specifying how Superior Tile had breached its obligations; he merely pointed out that the Note required Superior Tile to make interest payments on the principal of the loan, along with regular payments to Linda and Mary. He sought recovery of $230,000, plus interest. Later that year, Pop voluntarily dismissed the suit. He never re-filed it.

issues now before us because the parties are diverse, the amount in controversy exceeds $75,000, and the "probate exception" to diversity jurisdiction does not apply to any of the relevant issues. Neither party challenges that determination, and as the record stands, we are satisfied that the district court was correct.

4

Also in 2007, after Diane had become trustee of the Trust, George instructed Diane to withdraw $412,000 from the Trust's assets. Diane did as George said, and the money was deposited into a joint account that they controlled together.

Pop died in 2009. At the time, no one in the Combis family took any steps to either open or probate his estate. Years later, on July 31, 2013, a probate court designated Desa Ballard, a South Carolina attorney, as the estate's personal representative. A few months after that, the relevant parties agreed that Ballard would replace Diane as trustee of the Trust.

Ballard initiated multiple actions to recover assets she believed were due to either Pop's estate or to the Trust. Of the claims Ballard levied, two sets remain relevant: First, on behalf of Pop's estate, Ballard claimed that Superior Tile had breached the Note by failing to return the $230,000 that Pop had loaned to the company. She did not allege that Superior Tile had failed to satisfy any of its other obligations under the Note. Second, on behalf of the Trust, Ballard brought claims against Diane and George relating to the $412,000 that Diane had transferred from the Trust's assets to her joint account with George in 2007. Characterizing the transfer as a loan to George, Ballard alleged that Diane had breached her fiduciary duty to the Trust by "loaning the assets of the [T]rust without proper security[,] and in failing to require repayment of the loan to the [T]rust on commercially-reasonable terms." J.A. 64. Additionally, Ballard alleged that as a debtor of the trust, George was liable to the Trust for the full principal of the $412,000 "loan," plus interest at the North Carolina statutory rate of 8%.

Following a bench trial, the district court dismissed Ballard's breach-of-contract claim

5

against Superior Tile as precluded by North Carolina Rule of Civil Procedure 41(a). The district court also found that Diane's transfer of $412,000 from the Trust to her joint account with George was not a loan, but a misappropriation of Trust assets. Accordingly, the district court held that Diane had breached her fiduciary duty to the Trust and that she and George were jointly and severally liable to the Trust in the amount of $412,000, plus pre-judgment interest. Both sides separately appealed, and the appeals were consolidated herein.[3]

## II.

Since this is an appeal from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo. *Sky Angel U.S., LLC v. Discovery Commc'ns*, LLC, 885 F.3d 271, 276 (4th Cir. 2018). Beginning with Ballard's appeal, we hold that the district court made a legal error when it concluded that Ballard's claim against Superior Tile was barred by North Carolina Rule of Civil Procedure 41(a). Proceeding to Diane and George's appeal, we hold that the district court erred in making George jointly and severally liable with Diane for damages resulting from Diane's transfer of funds from the Trust. Otherwise, we affirm the district court's factual findings and legal conclusions.

---

[3] Superior Tile, Diane, and George are jointly represented—an arrangement that appears, at best, ethically fraught. In their briefing, they sometimes refer to themselves as a single unit. At other times, they make arguments that would seem to benefit George at the expense of Diane. For the sake of clarity, we generally refer to the parties based on the primary interest at stake.

6

## A.

Ballard's appeal raises one issue: whether North Carolina Rule of Civil Procedure 41(a) prevents Pop's estate from recovering $230,000 from Superior Tile pursuant to the Note. We hold that it does not.

Rule 41(a) has two relevant components. First, when a plaintiff voluntarily dismisses an action, the dismissal is without prejudice. If the plaintiff re-files an action based on the same claim and then, once again, voluntarily dismisses the action, the second dismissal is treated as an "adjudication upon the merits," and the plaintiff is precluded from filing another suit based on the same claim. Second, when a plaintiff voluntarily dismisses an action, the plaintiff may file "a new action based on the same claim" if either (a) the statute of limitations governing the claim has not run, or (b) the statute of limitations has run, but it has been less than a year since the voluntary dismissal of the first action.

Rule 41(a) has no bearing on Ballard's attempt to recover under the Note. Rule 41(a) applies only to successive lawsuits based on the "same claim." Therefore, for Rule 41(a) to apply in this case, Ballard would need to have made the same claim against Superior Tile that Pop made in 2007. But Ballard did not make the same claim that Pop made in 2007. Although we do not know the exact factual predicate of Pop's claim (since he did not make factual allegations in his complaint), we may reasonably infer that it had something to do with events that occurred during Pop's life. In contrast, Ballard's claim is based on Superior Tile's failure to repay the principal of the loan to Pop's estate when it

came due after Pop's death.[4]   Therefore, Rule 41(a) does not bar Ballard's attempt to enforce the Note against Superior Tile, and the portion of the district court's order holding as much is vacated.[5]

## B.

We now turn to Diane and George's appeal.  Diane argues that (1) the district court erred in finding that her transfer of $412,000 from the Trust to her joint account with George was a breach of fiduciary duty; and (2) even if she breached her fiduciary duty, the

---

[4] North Carolina's intermediate appellate court has interpreted Rule 41(a) in substantially the same way.  That court has held that for purposes of Rule 41(a), when a contract calls for multiple payments, a claim based on the failure to make one payment is not the "same" as a claim based on the failure to make another, later payment. *Centura Bank v. Winters*, 583 S.E.2d 723, 725 (N.C. Ct. App. 2003).  We believe the Note at issue here is best viewed as a contract calling for multiple payments, with some payments being due during Pop's life and a single large one being due thirty days after Pop's death.  The latter payment forms the basis of the estate's claim today.  It follows that the factual predicate of the estate's claim is distinct from the factual predicate of any claim Pop could have brought while he was alive.  Therefore, the estate is not seeking to bring the "same claim" as Pop for purposes of Rule 41(a).  *See Brannock v. Brannock*, 523 S.E.2d 110, 113 (N.C. Ct. App. 1999) ("Our courts have required the strictest factual identity between the original claim and the new action" for the claims to be considered the same under Rule 41(a) (internal citations and quotation marks omitted)).

[5] In the alternative, Superior Tile asserts that even if Pop's estate accrued a valid claim under the Note thirty days after Pop's death, Ballard's suit to enforce the Note would be barred by North Carolina's three-year statute of limitations.  To the contrary, Ballard argues that South Carolina law controls the applicable statute of limitations, and that under South Carolina law, the statute of limitations governing the estate's claim against Superior Tile did not begin to run until Ballard was appointed the estate's personal representative; if that were true, then Ballard's claim would not be time-barred.  The district court did not address the choice-of-law question below, and we decline to resolve it now.  On remand, it will fall to the district court to apply South Carolina's choice-of-law rules and determine which state's law—North Carolina's or South Carolina's—controls the statute-of-limitations question.

district court erred in how it calculated pre-judgment interest on the Trust's damages. For his part, George argues that (1) the district court erred in holding him jointly and severally liable with Diane for Diane's breach of fiduciary duty; and (2) the district court should have offset the Trust's damages by one-third, to reflect that George is himself a Trust beneficiary. Addressing Diane and George's arguments in turn, we affirm the district court in most respects, but we conclude that the court erred by holding George jointly and severally liable with Diane for Diane's breach of fiduciary duty.

1.

Diane argues that her transfer of $412,000 from the Trust to her joint account with George was nothing more than a loan to one of the Trust's beneficiaries. According to Diane, since North Carolina law generally authorizes such loans, the transfer cannot have been a breach of her fiduciary duty.

Diane's argument that the transfer was a loan and therefore not a breach of fiduciary duty relies exclusively on North Carolina General Statute § 36C-8-816(18). In particular, Diane points out that § 36C-8-816(18) permits a trustee to "[m]ake loans out of trust property, including loans to a beneficiary on terms and conditions the trustee considers to be fair and reasonable under the circumstances . . . ." The comments to the statute clarify that "[t]he determination of what is fair and reasonable must be made in light of the fiduciary duties of the trustee and purposes of the trust." *Id.* (comment to paragraphs 18 and 19). In addition, the comments recognize that "[f]requently, a trustee will make loans to a beneficiary which might be considered less than prudent in an ordinary commercial

9

sense although of great benefit to the beneficiary . . . ." *Id.* Leaning on this permissive language, Diane contends that because the transfer at issue here *could* be construed as the type of "less than prudent" loan authorized by the statute, the district court erred in finding that it was not.

We disagree. Nothing in the plain language or comments of § 36C-8-816(18)—the only authority Diane cites—requires a district court to find that a transfer of property from trust to beneficiary is a loan simply because the trustee says so.[6] On the contrary, the statute provides that loaning trust property to a beneficiary under commercially unreasonable conditions is not *necessarily* a breach of the trustee's fiduciary duty. The existence of a statute permitting a trustee to extend commercially unreasonable loans under some circumstances does not make it clearly erroneous to find that *this* transfer was *not* a loan.

Diane offers no other basis for reversal. Since her statutory argument is unavailing, we affirm the district court's conclusion that Diane breached her fiduciary duty to the Trust.

2.

We now turn to the district court's calculation of pre-judgment interest. As part of its award of actual damages for Diane's breach of fiduciary duty, the district court multiplied the $412,000 transferred from the Trust by North Carolina's statutory interest rate of 8%

---

[6] Nor does § 36C-8-816(8) prevent a court from concluding that a transfer of property from a trust to a beneficiary *is* a loan, but one that breaches the trustee's fiduciary duty. Since Diane fails to show that the district court clearly erred when it found that the transfer was not a loan, we need not address that point.

per year, beginning on the date that Diane made the transfer. This resulted in a judgment of $711,619.94 for the Trust, with $299,619.94 of the judgment consisting of pre-judgment interest.

According to Diane, North Carolina General Statute § 24-5 required the district court to calculate pre-judgment interest beginning with the date Ballard filed the present action—not the date on which Diane made the transfer. Section 24-5 has two relevant provisions. Section 24-5(a) states that "[i]n an action for breach of contract . . . the amount awarded on the contract bears interest from the date of breach." Section 24-5(b) states that "[i]n an action other than contract, any portion of a money judgment designated by the fact finder as compensatory damages bears interest from the date the action is commenced . . . ." Diane contends that because the judgment at issue was for a breach of fiduciary duty and not a breach of contract, the district court should have followed § 24-5(b) and not § 24(a) when calculating interest. We disagree.

The district court correctly reasoned that in North Carolina, when a party consents to act as the trustee of an express trust, the fiduciary duties arising from his or her trusteeship are "essentially contractual in nature," such that "any failure to perform in compliance with the duties as a fiduciary is tantamount to a breach of contract." *Tyson v. N.C. Nat'l Bank*, 286 S.E.2d 561, 565 (N.C. 1982); *accord Bruce v. N.C. Nat'l Bank*, 303 S.E.2d 561, 563 (N.C. Ct. App. 1983). Although *Tyson* addressed a statute-of-limitations question, we conclude that if an express trustee's fiduciary duties are "essentially contractual in nature" for statute-of-limitations purposes, they are also "essentially contractual in nature" for the

11

purpose of calculating pre-judgment interest.[7]  Thus, the district court did not err in using the date on which Diane breached her fiduciary duty as the date on which pre-judgment interest began to accrue.

## 3.

We now consider whether North Carolina law permits George to be held jointly and severally liable with Diane for Diane's breach of fiduciary duty.  We hold that it does not.

Generally speaking, North Carolina law does not permit a plaintiff to maintain an action for breach of fiduciary duty against a defendant who did not owe the plaintiff a fiduciary duty in the first place.[8]  *Dalton v. Camp*, 548 S.E.2d 704, 707 (N.C. 2001) ("For

---

[7] Diane offers no counterpoint.  She does, however, assert that if the district court had really intended to compensate the Trust for its inability to collect interest on the $412,000 she transferred from it, then the court would have made a factual finding as to the "prevailing market interest rate" during the period following the transfer, and would have used that finding, rather than the statutory rate of 8%, to calculate the appropriate award.  Notably, Diane does not argue that this is what the district court should have done—the only issue she raises on appeal is whether, as a matter of law, the district court used the wrong accrual date when applying the statutory interest rate of 8%.  Since that is the only question properly before us, it is the only question we answer here.

[8] Some states recognize a cause of action against a non-fiduciary who knowingly participates in a breach of fiduciary duty.  *See, e.g., Glidden Co. v. Jandernoa*, 5 F. Supp. 2d 541, 555 (W.D. Mich. 1998) (applying Delaware law).  Whether a party may be liable under North Carolina law for "aiding and abetting" a breach of fiduciary duty appears to be an open question.  *See Ehrenhaus v. Baker*, 717 S.E.2d 9, 29 (N.C. Ct. App. 2011) (collecting cases).  We need not answer the question here, because (1) Ballard did not state a claim against George for aiding and abetting a breach of fiduciary duty, and (2) Ballard has not argued that we should affirm based on a theory of aiding and abetting Diane's breach of fiduciary duty.  Thus, whichever way the North Carolina Supreme Court ultimately rules on the question, aiding and abetting a breach of fiduciary duty is not, in these circumstances, an appropriate theory for extending liability to George.

a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties."). In this case, the district court did not conclude that George owed or breached a fiduciary duty to the Trust. Therefore, it erred in holding George jointly and severally liable with Diane for Diane's breach of fiduciary duty.

Ballard offers two arguments to the contrary, but both are unpersuasive. First, Ballard argues that during the events in question, George was acting as Diane's agent, and that North Carolina permits the agent of a fiduciary to be held jointly and severally liable for the fiduciary's breach of his or her duty when "the agent has . . . by his conduct added his own liability to that of his principal . . . ." *Rounsaville v. N.C. Home Fire Ins. Co.*, 50 S.E. 619, 621 (N.C. 1905). The only case Ballard cites for support, *Rounsaville*, is inapposite. *Rounsaville* concerns the causes of action available to someone who contracts with the agent of an undisclosed principal. *Id*. The case before us does not involve any such contract. Moreover, Ballard has maintained throughout this litigation that Diane removed the disputed sum from the Trust at George's direction.[9] George cannot reasonably be viewed as both the mastermind of Diane's wrongdoing and her agent. Accordingly, Ballard's agency theory is without merit.

Second, Ballard asks us to affirm the district court because that court "has inherent authority to reach a just result." Appellants' Second Br. at 12. We are unpersuaded. As an initial matter, the district court never referred to its own "inherent authority" in

---

[9] For example, Ballard asserts that "George was clearly the architect of [Diane's] wrongful conduct." Appellant's Second Br. at 10.

13

concluding that George and Diane were jointly and severally liable for Diane's breach of fiduciary duty. More significantly, although it is well-established that courts have certain inherent powers, it is also well-established that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). To that end, the inherent powers of the courts have generally been exercised to safeguard the fairness and integrity of the judicial process—e.g., to prevent parties from abusing the rules of evidence, discovery, and procedure, or to ensure that one party is not placed at a severe and unjust disadvantage as a litigant. *See id.* at 43–45. Ballard's argument attempts to stretch the court's inherent powers too far, and we find it unpersuasive. Accordingly, we vacate the portion of the district court's order holding George jointly and severally liable with Diane for Diane's breach of fiduciary duty.

4.

Finally, George asserts that because he is one of the Trust's three beneficiaries, one-third of the $412,000 Diane took from the Trust was rightfully his. Therefore, according to George, any damages resulting from Diane's misappropriation of those funds should be reduced proportionally. For support, George argues that under North Carolina General Statute § 36C-8-816(18), when a trustee loans trust assets to a beneficiary, the trust may "acquire a lien on future distributions for repayment" of the loan. His argument fails at the outset. As discussed above, the district court found that the transfer of funds at issue here was not a loan. That finding was not clearly erroneous. Accordingly, § 36C-8-816(18) is inapplicable. Since George fails to identify a reversible error of law, we conduct no further

14

analysis of the merits of this argument and leave the district court's treatment of the issue intact.[10]

### III.

For the foregoing reasons, we vacate the portions of the district court's order dismissing Ballard's action against Superior Tile and holding George jointly and severally liable with Diane for Diane's breach of fiduciary duty. On those points, we remand for further proceedings consistent with this opinion. In all other respects, we affirm the district court.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*

---

[10] We note one last, vestigial issue. The district court found that George and Pop were co-owners, with a right of survivorship, of a bank account containing $387,590.14. The district court also found that in 2006, Pop withdrew all the funds in the joint account without George's permission. On the basis of those findings, George asks us to remand and instruct the district court to "grant [him] a credit" equal to half the funds that were in the joint account. Appellees' First Br. at 18. George does not identify the proper source of this "credit." Nor does he identify a theory of law or equity under which the district court erred. Therefore, we decline to grant George his requested relief.